**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| WARREN S. WHITLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-0008 (AJT/JFA) |
| | ) | |
| CHRISTINE WORMUTH, Secretary of the Army,[1] | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Pursuant to Federal Rules of Civil Procedure 26(c)(1)(A) and Rule 37(c)(1) and Local Rules 7(F)(1), Defendant Christine Wormuth, Secretary of the Army, respectfully submits this memorandum of law in support of her motion for a protective order to preclude Plaintiff from using Defendant's privileged information, improperly obtained from a third party who could not waive Defendant's privileges, and to preclude Plaintiff from using documents and information not produced in discovery.

## INTRODUCTION

Defendant sought as part of her discovery requests all documents Plaintiff planned to use at trial, as well as all documents containing statements related to the Plaintiff's allegations in this action, and Plaintiff neither objected to those discovery requests nor produced even a single document in response to them. Despite those two incontrovertible facts, Plaintiff's trial exhibit list contains multiple documents that had never been produced by either party, including an

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Christine Wormuth is automatically substituted for John E. Whitley, the former Acting Secretary of the Army.

attorney-client communications and deliberative process privileged memorandum between the then-Deputy Under Secretary of the Army ("DUSA") and the then-General Counsel and Acting Under Secretary of the Army.  Despite repeated emails and a telephone conference to meet and confer regarding the privileged memorandum, PEX 20, Plaintiff refuses to withdraw that trial exhibit and destroy all copies of the document.  Additionally, despite Defendant's repeated requests, Plaintiff has failed to identify where his trial exhibits (including PEX 20) were produced in discovery.  As such, pursuant to this Court's authority under Rules 26 and 37, Defendant respectfully requests that the Court issue a protective order precluding Plaintiff from using PEX 20 and any and all other exhibits that Plaintiff failed to produce in discovery for any substantive purpose in this action – including, *inter alia*, at either summary judgment or trial.  Defendant further requests that Plaintiff be required to destroy all copies of PEX 20.

## BACKGROUND

### I.      Plaintiff's complaint

Plaintiff brings this action pursuant to Title VII, 42 U.S.C. § 2000e-16a, asserting that the Army (1) improperly detailed him away from his position as the Deputy Assistant Secretary of the Army for Diversity & Leadership while the Department of the Army Inspector General ("DAIG") investigated allegations that he had fraudulently submitted a performance evaluation of his subordinate employee in which he had substantially altered the description of her performance and reduced her rating after he had met with her and had her sign the original superior evaluation, and (2) that the Army improperly terminated him once the DAIG investigation revealed he had in fact fraudulently submitted the false document.  *See generally* Dkt. 1.  Plaintiff alleges the Army's actions were taken on the basis of his race and gender and in retaliation for his protected activity. *Id*.

## II.      The Parties' Discovery Period

### A.      Plaintiff's Document Requests

On February 22, 2021, Plaintiff served 30 requests documents in this action.  *See generally* DEX 1.  Relevant here is Plaintiff's requests numbered 1 and 23.  Plaintiff's request number 1 sought "[t]he documents filed with the U.S. Merit Systems Protection Board ('MPSB') by the Department of the Army in MSPB appeal."  DEX 3, at 4.  And Plaintiff's request number 23 sought "the Memorandum from/to Army General Counsel (or the Office of general Counsel) on Executive Resources Board of 17 December 2019."  DEX 3, at 6.

Defendant timely objected to Plaintiff's document requests on March 9, 2021 and as to request 23, Defendant specifically objected to this request as too vague and ambiguous to allow any meaningful search for responsive information and further protected by one or more privileges; indeed, Defendant searched for the document sought through RFP 23, but the information provided in the request was insufficient to allow Defendant to uncover it.  *See generally* DEX 2 at 2, 17. On the specific issue of privilege, Defendant stated, "Defendant further objects to this request in that it appears to explicitly seek information protected by the attorney-client process privilege and/or the attorney work product doctrine, as well as information that may be protected by the deliberative process privilege."  DEX 2, at 17.  Defendant ultimately rested on this objection and accordingly did not search for information responsive to Plaintiff's request for production number 23.  At no point during the discovery period did Plaintiff contest Defendant's objection, including, *inter alia*, seeking a meet and confer to narrow the scope of the request for production or provide a more detailed description of the document so as to address Defendant's objection.

Over the course of discovery, Defendant produced more than 2,100 documents to Plaintiff, spanning more than 13,000 pages, which included—at Plaintiff's explicit request—all documents

produced by either side and all documents filed in the administrative Merit Systems Protect Board

("MSPB") proceeding that preceded this civil action.  *See* DEX 9, at 5, 22-61.

**B.  Defendant's Document Requests**

By contrast, Plaintiff's response to Defendant's request for documents was less than robust.

On February 23, 2021, Defendant served upon Plaintiff 20 individual requests for the production

of documents.  *See generally* DEX 1.  Relevant here are request numbers 3, 4, 8, and 9, which state

in relevant part:

> 3. Any and all written statements by any potential witness regarding allegations, claims, testimony, or damages involved in this action.
>
> 4. Any and all documents that reflect any written or oral statement by any potential witness regarding allegations, claims, testimony, or damages involved in this action.
>
> 8. Any and all documents that you intend to use as an exhibit in this action.
>
> 9. Any and all documents reflecting any communications between you and any other person regarding the adverse employment action(s) that form(s) the basis of your complaint, including the damages sought, in this action.

DEX 1, at 4-5.  Plaintiff submitted timely objections to several of Defendant's discovery requests

on March 10, 2021, but did not lodge any objections whatsoever to Requests 3, 4, or 8, and objected

only to the production of attorney-client privileged and/or work product protected documents with

respect to Request 9.  *See generally* DEX 4.  When it came time for Plaintiff to serve his responses

to Defendant's discovery requests on March 25, 2021, Plaintiff responded to request number 4 by

stating that he "and his counsel have no such documents beyond those mentioned in response to

Document Request No. 3", which in turn stated that "[a]ll documents containing such written

statements are contained in the administrative record of the MSPB proceedings . . . ."  DEX 5 at

2.  As to Plaintiff's response to request number 8, Plaintiff stated that "most of the documents he

will be using in this action are contained in the MSPB administrative record, the MSPB hearing

materials and/or the depositions taken in preparation for that hearing."  DEX 5, at 3.  And, in response to request number 9, Plaintiff stated only that all non-privileged documents "are all contained in [the] MSPB record, the MSPB hearing materials and/or the depositions taken in preparation for that hearing . . . ."  *Id*.  Plaintiff never supplemented any of these responses with any production of documents throughout the entirety of the discovery period.  In fact, in response to Defendant's document requests, Plaintiff has only *ever* produced *two* documents, both related to Plaintiff's damages, neither of which appear on Plaintiff's exhibit list.  *Compare* DEX 6, *with* Dkt. 28 Pt. B.

### III.   Defendant's Discovery of Plaintiff's Possession of Defendant's Privileged Information

Discovery in this matter closed on May 14, 2021 and pursuant to the Court's opening scheduling order, the parties were required to file all proposed trial exhibits before the final pre-trial conference scheduled for May 20, 2021 at 10:00am.  Dkt. 15.  Consistent with the Court's order, both parties filed and served their proposed trial exhibit and witness lists in advance of the final pre-trial conference.  *See generally* Dkts. 28, 29, 30.  The parties also shared their proposed trial exhibits in advance of the conference as required by the Court's Scheduling Order.  Dkt. 15.  Upon reviewing Plaintiff's proposed exhibits and exhibit list on Friday, May 21, 2021, Defendant discovered for the first time that Plaintiff's proposed exhibits were entirely comprised of documents containing no Bates number -- thus demonstrating that they had not been produced in discovery -- and discovered that Plaintiff's exhibits included the privileged document at issue in this motion: Plaintiff's proposed exhibit ("PEX") 20 entitled, "Memorandum for Army General Counsel from Thomas E. Kelly, III, Deputy Under Secretary of the Army, re: Executive Resources Board Tasking (17 December 2019)."  *See* Dkt. 28 Pt.B ¶ 20.

IV.     **Attempts to Prevent Use of Privileged Document**

Upon discovering the privileged document, undersigned immediately wrote to Plaintiff's counsel on Friday, May 21, 2021, inquiring as to how they came to obtain their proposed exhibit 20 as it "appear[ed] on its face to be an attorney-client communication between the Deputy Under Secretary of the Army and the Army General Counsel."  DEX 7.  Having received no response, undersigned counsel followed up on Tuesday, May 25, 2021, and again asserted that Plaintiff's proposed exhibit 20 "appears on its face to be an attorney-client privileged communication" and as such requested that Plaintiff's counsel verify that "this document and all copies have been destroyed."  DEX 7.  Plaintiff responded that, because he had not obtained the document through discovery, he did not believe he needed to destroy the document, and disputed that the document was attorney-client privileged.  DEX 10, at 4-5.  Defendant reiterated that the document was plainly privileged and requested to meet and confer by telephone as soon as possible.  DEX 10, at 3-4.  Plaintiff responded that he was available at 2:30 on Friday, May 27, 2021, but then at 2:00 on Friday, May 27, 2021, Plaintiff rescheduled the meeting to 2:30 on Tuesday, June 1, 2021. DEX 10, at 1-2.

On Tuesday, June 1, 2021, Defendant reiterated that counsel for Defendant had been in contact with everyone involved in communication described in PEX 20, and that the document was, in fact, both attorney-client and deliberative process privileged.  Plaintiff responded that his unidentified "sources" had told him it was not an attorney-client communication.  Defendant asked if he had any basis to challenge the deliberative process privilege, and Plaintiff would only reiterate that he did not believe it was deliberative process privileged.

With respect to the fact that none of Plaintiff's trial exhibits bore any indication that they had been produced in discovery, Plaintiff responded that "the bulk of the exhibits" were produced

in the administrative hearing.  Defendant noted that the vast majority of the documents bore no Bates numbering, or docketing text, or other identification that they had been produced in either the MSPB proceeding or in discovery in either the administrative proceeding or district court. Defendant further noted that merely referring to the "bulk of" documents demonstrated the problem with Plaintiff's trial exhibits, as there was no way to identify which of the documents had not been produced.  Plaintiff assured Defendant that he would identify where the documents had been produced "in the next day or two," *i.e.*, on June 2 or 3.  *See also* Dkt. 35, at 2.  As of this filing, Plaintiff has not identified where any of his documents were produced in either the administrative proceeding or in discovery in District Court.

## ARGUMENT

### I.      Relevant Standard

A motion for a protective order is governed by Federal Rule of Civil Procedure 26(c), which provides, in pertinent part, as follows:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . [f]orbidding the disclosure or discovery . . . .

Fed. R. Civ. P. 26(c)(1)(A).  The party seeking the entry of the protective order (here, Defendant) bears the burden of demonstrating the good cause required by the rule.  *See, e.g.*, *McAfee v. Boczar*, 2012 WL 2374173, at *3 (E.D. Va. Jun. 22, 2012).

### II.     The Court should require Plaintiff to destroy PEX 20 and preclude any use or dissemination of it because it is privileged.

At the outset, the Court should issue a protective order requiring Plaintiff to destroy the memorandum identified as PEX 20 and all copies, and preclude Plaintiff from using that document in any way at summary judgment or trial because that document is a privileged document for which

the Army has not waived privilege.  Specifically, this document is protected by both the privilege for attorney-client communications and the deliberative process privilege.

### A.   Plaintiff's proposed Exhibit 20 is protected by the privilege for attorney-client communications.

PEX 20 is a privileged attorney-client communications document for which the Army never waived privilege.  Although Plaintiff alleges that he received the document through a leak from the former DUSA after he was no longer employed by the Army, Plaintiff does not and cannot identify any valid waiver of the Army's privilege.

The attorney-client privilege is designed to "encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 291 (4th Cir. 2009) (holding that the privilege "protects not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer . . . .").  Where the attorney-client privilege applies, "the privilege affords all communications between attorney and client absolute and complete protection from disclosure."  *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997).

To demonstrate attorney-client privilege, a party must demonstrate:

(1) The asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client; (b) without the presence of strangers; (c) for the purpose of securing primarily either (i) an opinion on the law or (ii) legal services or (iii) assistance in a legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived.

*Allen*, 106 F.3d at 600.  Here, PEX 20 meets all of these criteria.

First, the holder of the attorney-client privilege with respect to PEX 20 is the Army, as demonstrated by the fact that then-DUSA Kelly, in his official capacity, sought the advice of the

General Counsel of the Department of the Army, in his official capacity, regarding matters that pertained exclusively to the Army.  *See* Dkt. 28 Pt.B ¶ 20; DEX 14, ¶ 9.

Second, the person to whom the communication was made, James McPherson, then-General Counsel of the Department of the Army, was a licensed member of the California State Bar.  DEX 14, ¶ 4; DEX 13.  Furthermore, then-DUSA Kelly's communication to General Counsel McPherson was made in General Counsel McPherson's attorney capacity as demonstrated by the memorandum itself,  which was addressed to the "Army General Counsel."  Dkt. No. 28 Pt.B ¶ 20.  And, General Counsel McPherson regularly provided legal advice to then-DUSA Kelly regarding personnel matters, including those before the Executive Resources Board, such those referenced in the contents of PEX 20.  Dkt. No. 28 Pt.B ¶ 20; DEX 14, ¶¶ 5-9, 11-13.

Third, the communication relates to a fact of which the attorney was informed by his client.  This is demonstrated by the fact that the memorandum is a transmission from then-DUSA Kelly to "Army General Counsel."  *See* Dkt. No. 28 Pt.B ¶ 20; DEX 14 ¶ 12.  This communication occurred without the presence of strangers, specifically in a meeting solely between then-DUSA Kelly and then-General Counsel McPherson.  DEX 14, ¶ 10.  The purpose of the communication between then-DUSA Kelly and then-General Counsel McPherson was to secure an opinion of law and legal services regarding the legal implications of the alleged performance of a SES employee as that performance related to potential personnel decisions the Army was considering regarding the employee.  DEX 14, ¶ 12.  And, this communication was not made for the purpose of committing a crime or tort.  DEX 14, ¶ 13.

Fourth, the Army explicitly claimed attorney-client privilege over PEX 20.  *See* DEX 2, at 17; DEX 7; DEX 10.  And, the privilege has not been waived.  DEX 14, ¶ 14; DEX 12, ¶ 8.  Notably, the Army explicitly refused to search for and/or provide Plaintiff this document in

discovery on the basis of privilege.  *See* DEX 2, at 17.  Moreover, although Plaintiff has alleged that he received the document from former DUSA Kelly "weeks or months" before he disclosed the fact that he had obtained this privileged document to Defendant, former DUSA Kelly could not have waived the Army's privilege.  DEX 10, at 3-4.  In his deposition, Plaintiff testified that he had only had two interactions with then-DUSA Kelly, in 2017 and July 2018, before PEX 20 had ever been drafted, and one communication with former DUSA Kelly in February 2021, after he had left federal service on January 20, 2021.  *See* DEX 11, at 110:24-112:25; DEX 15.  Thus, by Plaintiff's own sworn testimony, the only interaction Plaintiff had with former DUSA Kelly after PEX 20 had been drafted in December 2019 occurred *after* he was no longer the DUSA. DEX 11, at 110:24-112:25; DEX 15.

At the outset, only the Secretary and Under Secretary of the Army—not the *Deputy* Under Secretary—can waive the Army's privileges with respect to personnel matters involving SES employees, such as those referenced in PEX 20.  *See* DEX 14, ¶ 14; Army Regulation ("AR") 27-26 R. 1.6; Army General Order ("AGO") 2019-01; AGO 2020-01.  Here, neither the current nor former Under Secretary of the Army waived the Army's privilege with respect to PEX 20.  *See* DEX 14, ¶ 14; DEX 12, ¶ 8.  As AR 27-26 explains, "[t]he Secretary of the Army is the ultimate responsible official for invoking and waiving the privilege and confidentiality where the Department of the Army is the client."  AR 27-26 R.1.6. Cmt. (15).  "Below the Secretary of the Army, . . . heads of Army organizational elements generally may invoke or waive attorney-client privilege," but may *only* do so "for the benefit of the Army."  *Id*.  For personnel matters involving SES employees, the Under Secretary of the Army is the "head[] of the Army organizational element[]."  *Id*.; AGO 2020-01 ¶ 7 ("The USA [Under Secretary of the Army] is the Senior Official for all Executive and Senior Professional personnel actions . . . .").  As such, even if former DUSA

Kelly gave Plaintiff PEX 20, such transmission did not and could not waive the Army's privilege because even a current DUSA would lack authority to waive the privilege for the Army by providing attorney-client privileged information to an opposing party in litigation.

Moreover, even if a current DUSA could waive the Army's privilege (and he plainly cannot), a *former* DUSA certainly cannot waive the Army's privilege.  *See, e.g.*, *CFTC v. Weintraub*, 471 U.S. 343, 348-49 (1985) (holding that "[w]hen control of a corporation passes to new management, the authority to assert and waive the corporations' attorney-client privilege passes as well"); *Smith v. Ergo Sols., LLC*, No. 14-382, 2017 WL 2656096, at *4 (D.D.C. June 20, 2017); (holding former employee cannot waive the company's privilege); *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (holding that an ex-employee cannot waive a corporation's attorney-client privilege).  Here, Plaintiff expressly testified that his only interaction with former DUSA Kelly after the December 2019 drafting of PEX 20 occurred in February 2021, after former DUSA Kelly had resigned from federal service in January 2021.  DEX 11, at 110:24-112:25; DEX 15.  Thus, for this independent reason, no transmission of PEX 20 by former DUSA Kelly to Plaintiff could waive the Army's privilege.

Thus, PEX 20 is a privileged attorney-client communication.  As such, Defendant respectfully requests that the Court require Plaintiff to destroy all copies of PEX 20 and preclude Plaintiff from using this document at summary judgment or trial.

**B.    Plaintiff's proposed Exhibit 20 is protected by the deliberative process privilege.**

PEX 20 is also protected by the deliberative process privilege.  As with the attorney-client communications privileged nature of this document, Plaintiff was fully apprised that the government claimed privilege over this document because it explicitly objected to Plaintiff's discovery request for this document on the basis of the deliberative process privilege, and

Defendant expressly invoked this privilege in its meet and confer communications. *See* DEX 2,
17; DEX 10. "The governmental deliberative process privilege protects the privacy of
communications made as part of the decision-making process of a government agency." *See*
*EEOC v. Freeman*, 288 F.R.D. 92, 100-01 (D. Md. 2012) (citing *Dep't of Interior v. Klamath*
*Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)) (hereinafter "*Freeman*"); *City of Va. Beach*
*v. Dep't of Com.*, 995 F.2d 1247, 1252-53 (4th Cir. 1993)). "The deliberative process privilege
rests on the obvious realization that officials will not communicate candidly among themselves if
each remark is a potential item of discovery and front page news, and its object is to enhance the
quality of agency decisions by protecting open and frank discussion among those who make them
within the Government." *EEOC v. BMW Mfg. Co., LLC*, No. 7:13-1583, 2015 WL 5449086
(D.S.C. July 30, 2015) (hereinafter "*BMW*"). "[T]he privilege encourages free-ranging discussion
of alternatives; prevents public confusion that might result from the premature release of
nonbinding deliberations; and insulates against the chilling effect likely were officials to be judged
not on the basis of their final decision, but for matters they considered before making up their
minds." *City of Va. Beach*, 995 F.2d at 1252-53 (internal quotations omitted). Accordingly,
materials must be "both predecisional and deliberative" in order to be subject to the deliberative
process privilege, meaning they must be "prepared in order to assist the decisionmaker in arriving
at his decision" and "reflect the give-and-take of the consultative process by revealing the manner
in which the agency evaluates possible policies or outcomes." *Solers, Inc. v. Internal Revenue*
*Serv.*, 827 F.3d 323, 329 (4th Cir. 2016) (internal quotations omitted). The privilege protects
"subjective documents which reflect the personal opinions of the writer rather than the policy of
the agency." *Id*. (internal quotations and emphasis omitted).

"There are three procedural requirements for assertion of the privilege:  1) the agency head must assert the privilege; 2) the agency head must state with particularity the information subject to the privilege; and 3) the agency must aver precise and certain reasons for preserving the confidentiality of the requested documents."  *Hugler v. Bat Masonry Co., Inc.*, No. 6:15-cv-28, 2017 WL 1207847, at *3 (W.D. Va. Mar. 31, 2017).  All three requirements have been satisfied in this case.

First, the deliberative process privilege here has been asserted by the current Senior Official Performing the Duties of the Under Secretary, who is the Department of the Army "agency head" over SES personnel matters, including those referenced in PEX 20.  *See* DEX 12, ¶ 1; AGO 2020-01 ¶ 7.

Second, Mr. Lowman identified PEX 20 as comprised entirely of the information subject to the deliberative process privilege.  *See generally* DEX 12.  Specifically, Mr. Lowman identified the "internal deliberative pre-decisional discussions regarding the Army's ultimate decisionmaking with respect to personnel issues relating to the SES official discussed in the memorandum" that comprises PEX 20 as the information subject to the deliberative process privilege.  *Id*. ¶ 7.

Finally, Mr. Lowman has averred precise and certain reasons for protecting the confidentiality of PEX 20.  He explained that "protection of the[] deliberations [in PEX 20] is necessary to preserve the integrity of their particular deliberations, as well as future Army deliberations."  *Id*. ¶ 6.  He further explained that he is "particularly concerned that failing to maintain the confidentiality of this memorandum w[ould] have a deleterious chilling effect on future deliberations between high-level Army officials about matters relevant to the Executive

Resources Board," and that "high-level officials may be less than candid if future discussions" if the deliberative process privilege is not maintained to withhold this document. *Id.*

Moreover, as fully explained in Pt.I, *supra*, even if former DUSA Kelly provided this document to Plaintiff, he lacked any authority to waive the Army's privilege over this document as he not only was not and has never been the Under Secretary of the Army, and by the time Plaintiff alleges former DUSA Kelly gave him the document, he was not even an Army employee. *See* DEX 11, at 111:20-112:25; AR 27-26; AGO 2020-01.

Thus, Defendant properly invoked—and has not waived—the deliberative process privilege over PEX 20. As such, for this independent reason, Defendant respectfully requests the Court require Plaintiff to destroy all copies of PEX 20 and preclude Plaintiff's use of the document and/or the information contained therein.

### III. The Court should enter a protective order and Rule 37(c)(1) precluding Plaintiff from using PEX 1-5, 7, 10-11, 15, 17, 20-21, 30, 34-37, and 41 as he never disclosed those documents during discovery.

In addition to requiring the destruction of PEX 20 and precluding its use on privilege grounds, the Court should also preclude Plaintiff from using PEX 1-5, 7, 10-11, 15, 17, 20-21, 30, 34-37, and 41 because it does not appear that any of these exhibits were produced in discovery, despite the fact that Defendant propounded multiple discovery requests to which these documents were responsive. Federal Rule of Civil Procedure 37(c)(1) vests the Court with broad discretion to preclude the use of evidence that a party fails to disclose during discovery. *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003). Federal Rule of Civil Procedure 37 clearly instructs and puts litigants on notice that, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or his harmless." Fed. R. Civ. P. 37(c)(1). The Fourth Circuit has observed

14

that Rule 37(c)(1) applies to the use of evidence regardless of any finding of bad faith or disregard of the discovery rules. *See S. States Rack & Fixture*, 318 F.3d at 596 ("While Rule 37(c)(1) requires the nondisclosures to be 'without substantial justification' and harmful, neither of these requirements suggests that the non-disclosing party must act in bad faith or otherwise culpably.")

The basic purpose of Rule 37(c)(1) is to prevent surprise and prejudice to the opposing party, as well as to encourage compliance with discovery deadlines. *See Thibeault v. Square D Co.*, 960 F.2d 239, 246 (1st Cir. 1992) (noting that "the focus of a preclusion inquiry is mainly upon surprise and prejudice, including the opponent's ability to palliate the ill effects stemming from the late disclosure"). At all times, the burden of proof is on the non-disclosing party to show that its failure was either justified or harmless. *See Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) ("[T]he burden of establishing these factors lies with the non-disclosing party."); *Carr v. Deeds*, 453 F.3d 593, 602 (4th Cir. 2006) ("It is the burden of the party facing sanctions to show that the failure to comply was either substantially justified or harmless."). Absent such a showing, exclusion under Rule 37(c)(1) is automatic and mandatory. *See* Fed Rule Civ. P. 37 adv. comm. note (1993); *see also Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 727 (E.D. Va. 2001) (noting that Rule 37(c)(1) "automatically imposes the preclusion sanction unless the noncomplying party can show that there is substantially justification for the failure to make the disclosure and that the failure to disclosure was harmless").

Because it appears that Plaintiff failed to produce—or even identify— PEX 1-5, 7, 10-11, 15, 17, 20-21, 30, 34-37, and 41 in discovery, *see* Dkt. 28 Pt. B, Plaintiff should not be allowed use them in the upcoming trial or in support of or opposition to any motion, including any upcoming motion for summary judgment. Although Plaintiff did not produce PEX 6, 8-9, 12-14, 16, 18-19, 22-29, 31-33, 38-40, and 42 in discovery either, Plaintiff generically referred to

documents "in the administrative record of the MSPB proceedings" in response to his discovery requests, and Defendant has identified these documents in the documents used in those administrative proceedings. *See generally* DEX 5. Thus, because Plaintiff at least marginally identified these documents in his discovery responses, Defendant does not move under Rule 37 on these documents.

With respect to the remaining documents, PEX 1-5, 7, 10-11, 15, 17, 20-21, 30, 34-37, and 41, however, Plaintiff has no justification for failing to disclose these documents during discovery—especially when they were responsive to Defendant's requests for the production of documents, which were due March 25, 2021. DEX 5, at 2-3 (RFP 3, 4, 8, & 9). Indeed, Defendant sought the production of each document Plaintiff intended to use as an exhibit, as well as all documents containing statements of any witness relevant to this action, and all documents containing communications between Plaintiff and anyone else regarding this action. And yet, even though Plaintiff responded with a reference to documents "in the MSPB administrative record" DEX 5, at 2-3, and even though, at Plaintiff's request, Defendant produced the entire MSPB record—including all MSPB discovery—to Plaintiff *with Bates numbers*, not one of Plaintiff's documents contains any Bates number. *See* DEX 9 at 5, 22-61. Thus, the lack of any Bates number on Plaintiff's exhibits demonstrates *none* came from the document production during discovery in this Court.[2] In other words, Plaintiff elected to sit on responsive documents until the 11th hour

---

[2] Although it is certainly possible that some of the documents Plaintiff identified as exhibits appear somewhere within the more than 13,000 pages of documents that Defendant produced in this action, Defendant is quite certain that at least some of Plaintiff's exhibits, including PEX 20, appear *nowhere* in the production. As Defendant told Plaintiff in their meet and confer call, if Plaintiff can identify by Bates number where any of the other proposed exhibits have been produced in discovery, Defendant will withdraw its motion as to those exhibits Plaintiff can demonstrate were produced. *See also* Dkt. 35, at 2. To date, Plaintiff has provided no such identification.

before electing to disclose them to Defendant.  Nothing justifies this delay.  *See Digit. Vending Servs. Int'l v. Univ. of Phoenix*, No. 2:09-cv-555, 2013 WL 5533233, at *7-*8 (E.D. Va. Oct. 3, 2013) (holding that there was no justification and the lack of disclosure was not harmless when the withheld documents were in possession of party and easily obtainable through a reasonable inquiry).

Moreover, although Plaintiff asserted through a meet and confer email that, with respect to PEX 20, the document was in his mother's basement and he simply had not looked for it during the discovery period, DEX 10, at 4-5, this blatant failure to take even the most basic steps to search for a document that Plaintiff explicitly knew was in his possession—and failure to even apprise Defendant of his possession of the document—demonstrates that Plaintiff's lack of disclosure was not harmless.  Indeed, in addition to seeking documents containing any relevant statements of any witness (to which PEX 20 plainly was responsive), Defendant also sought all statements by any employee of the United States relevant to Plaintiff's claims through Interrogatories 5, 6, and 11. *See* DEX 8, at 2-9, 12.  Plaintiff not only failed to identify this statement by then-DUSA Kelly in his interrogatory responses, but has never supplemented them to identify this statement.  *See* DEX 8.

Had Defendant been apprised of these documents during the discovery period, Defendant would have altered his discovery approach, including seeking return and destruction of PEX 20 substantially earlier, potentially using PEX 1-5, 7, 10-11, 15, 17, 20-21, 30, 34-37, and 41, in Defendant's deposition of Plaintiff, potentially further refining Defendant's discovery requests to seek any follow-up documents and information, and potentially taking other depositions and adding witnesses to Defendant's trial witness list.  Instead, Defendant is now unfairly left to investigate the veracity of these new documents without the benefit of any of the tools of discovery,

and while simultaneously preparing for summary judgment and trial.  Accordingly, there is no justification for this late disclosure and it is not harmless.  A protective order precluding Plaintiff from using these documents at trial for any hearing, or summary judgment is therefore the appropriate remedy for these circumstances pursuant to Rule 37(c)(1).  *Digit. Vending Serv. Int'l*, 2013 WL 5533233, at \*7-\*8 (holding that documents produced three months before trial rather during discovery were subject to sanctions under Rule 37(c)(1)).

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that Plaintiff be precluded from retaining copies of, using, or relying in any way PEX 20, and that Plaintiff be precluding from using PEX 1-5, 7, 10-11, 15, 17, 20-21, 30, 34-37, and 41 at summary judgment or trial.

Dated: June 4, 2021                                   Respectfully submitted,

                                                      RAJ PAREKH
                                                      ACTING UNITED STATES ATTORNEY

                                                      *By:*_____/s/_____
                                                      KIMERE J. KIMBALL
                                                      MATTHEW J. MEZGER
                                                      Assistant United States Attorneys
                                                      Office of the United States Attorney
                                                      Justin W. Williams U.S. Attorney's Building
                                                      2100 Jamieson Avenue
                                                      Alexandria, Virginia 22314
                                                      Tel:    (703) 299-3763/3741
                                                      Fax:    (703) 299-3983
                                                      Email: kimere.kimball@usdoj.gov
                                                              matthew.mezger@usdoj.gov
                                                      *Counsel for Defendant*