# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| WARREN S. WHITLOCK, | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| v. | )    **Civil Action No: 1:21-cv-00008-AJT-JFA** |
|  | ) |
|  | ) |
| JOHN E. WHITLEY, | ) |
| **Acting Secretary of the Army,** | ) |
|  | ) |
| **Defendant.** | ) |
|  | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR A PROTECTIVE ORDER

Defendant's Motion and the Memorandum in support thereof (cited simply as "Mot.") seeks, *inter alia*, a protective order to preclude Plaintiff from possessing or using in this lawsuit a memorandum, dated Dec. 17, 2010, marked as Plaintiff's Exhibit 20 ("PEX 20")   As analyzed below, all of Defendant's grounds for the protective order, whether addressing PEX 20 or otherwise, should be rejected.

**I.      Contrary to Defendant's Assertion, PEX 20 is Not Protected by Attorney-Client Privilege.**

Defendant cannot cloak PEX 20 under the attorney-client privilege because the necessary elements are absent.  To withhold PEX 20, a government agency like Defendant must prove the five essential elements set forth and addressed below.

### A.     Defendant Cannot Satisfy The Five Element Privilege Analysis.

As the proponent of the claimed privilege, Defendant bears the burden of proof on each of five elements in order to successfully assert the privilege. Defendant must prove "not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged [(confidential] and that the privilege was not waived." *Jones v. Murphy*, 256 F.R.D. 510, 513 (D. Md. 2008), *quoting and citing inter alia In re: Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003). The five elements are drawn from settled Fourth Circuit and other authorities. *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997) (cited here as "*Allen*") (listing the elements); *Cause of Action Inst. v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 347 (D.D.C. 2018) (same) (cited here as "*COA*").[1]

**Element (1)**: The holder of the alleged privilege must be a client of the relevant lawyer. *Allen*, 106 F.3d at 600; *COA*, 330 F. Supp. 3d at 347. While it is undisputed that Defendant was a client of "Army General Counsel," the addressee of the PEX 20 memo, it is very much in dispute whether PEX 20 is a privileged attorney-client communication. The mere fact that PEX 20 is addressed to "Counsel" does not establish any privilege. *See Parneros v. Barnes & Noble, Inc*., 332 F.R.D., 482, 497 (S.D.N.Y. 2019) (citing and discussing authorities).

**Element (2):** The recipient of the communication at issue must be a member of the bar, and *in connection with that communication, be acting in* his or her *capacity as a lawyer*. *Allen*, 106 F.3d at 600 (text paraphrased with emphasis added); *COA*, 330 F. Supp. 3d at 347 (same). Though given ample opportunity, Defendant's Motion nevertheless utterly fails to establish this element.

---

[1] *COA* cites numerous authorities for the five elements.

PEX 20 was addressed to "Army General Counsel" on December 17, 2019. However, at the time of PEX20, James E. McPherson ("McPherson") was acting as both "General Counsel" *and as* Under Secretary of the Army, a non-lawyer position. *See* DEX 14 (McPherson Decl.), ¶¶ 2-3. Thus, McPherson was serving in "mixed capacity," and "[w]here an agency lawyer serves in a mixed capacity that involves responsibilities both within and 'outside the lawyer's sphere,' the agency employee's communications will only be protected to the extent that they involve [the lawyer's] professional, legal capacity." *Rollins v. U.S. Dep't of State*, 70 F Supp. 3d 546, 552 (D.D.C. 2014), *citing In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984).

At the time of PEX20, McPherson "wore two hats" – one as a lawyer and one as a senior executive political appointee. To invoke the attorney-client privilege to block disclosure of PEX 20, Defendant "must establish that securing legal advice was a '*primary purpose*'" of this agency communication. *COA*, 330 F. Supp. 3d at 347 (emphasis added; citation omitted). Even "[w]here business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 411 (D. Md. 2005). The mere fact that the document involved an agency lawyer is "insufficient" to denote it as protected under the attorney-client privilege. *COA*, 330 F. Supp. 3d at 347 (citation omitted).

Defendant's submission of two declarations (DEX 12 and DEX 14) is unavailing. Consider first McPherson's Declaration (DEX 14). Defendant must show the PEX 20 memo was sent to McPherson "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *N.L.R.B. v. Interbake Foods, LLC,* 637 F.3d 492, 501-02 (4th Cir. 2011), *quoted and followed in U.S. v. Moazzeni*, 906 F. Supp. 2d 205, 511 (E. D.

-3-

Va. 2012).[2]  But the McPherson Declaration does not state PEX 20 was sent to him as "counsel" to provide or support "an opinion on law."  Indeed, the Declaration refers only to McPherson's being "regularly" consulted for legal advice in "personnel matters impacting SES employees,"  DEX 14, ¶ 6, and adverts to his other dealings with the Agency in a general way as counsel.  *See id.* at ¶¶ 5,9-11.  Neither the Declaration nor PEX20 itself requests – or even hint at a request – for "legal services" or "assistance in some legal proceeding."   And the Declaration does not assert that the "General Counsel" did anything as a lawyer in response to receiving PEX 20.   Therefore, DEX 14 does not satisfy Element 2's basic legal requirement for the attorney-client privilege to attach to PEX20.

Consider next the Declaration of Christopher J. Lowman, who has been the "Senior Official Performing the Duties of the Under Secretary of the Army since January 20, 2021."  DEX 12 (Lowman Declaration), ¶ 1.  Respectfully, Mr. Lowman nowhere establishes his testimonial competence, *e.g.*, personal knowledge to testify about the origin of the PEX 20 memo (author, circumstances) or the intentions of the sender and the receiver of the PEX 20 memo.  Accordingly, it is not surprising to find that the Lowman Declaration nowhere attempts to assert a factual basis for attorney-client privilege protection for PEX 20.

The attorney-client privilege has a long tradition and enjoys respect in the law, but the privilege is not presumed or favored in the federal courts.  *Jones*, 256 F.R.D. at 512.  Indeed, because the privilege "impedes the full and free discovery of the truth, [it] is to be narrowly construed[.]"  *In re Grand Jury Subpoena*, 204 F.3d 516, 519 (4th Cir. 2000) (quotation and citation

---

[2] These decisions were cited and followed also in *Raynor v. G4S Secur. Sols. (USA) Inc*., 2017 U.S. Dist. LEXIS 190600, *3-4, 2017 WL 5509994 (W.D.N.C.).

omitted). Defendant's Motion and supporting declarations do next to nothing to show that the PEX 20 memo was a communication to a lawyer for the lawyer to use or act upon concerning a legal opinion or decision.

**Element 3:** The communication must relate to a fact about which the client informed the lawyer outside the presence of strangers, *for the purpose of securing legal advice*. *Allen*, 106 F.3d at 600 (text paraphrased with emphasis added); *COA*, 330 F. Supp. 3d at 347 (same); *see id.* at 347 (stating the requirement that securing legal advice was a "primary purpose" of the agency's communication (citation omitted)).

Defendant has not carried the burden of proving the information provided in PEX 20 to the "Army General Counsel" was not disclosed to "strangers." Neither of Defendant's two Declarations show any testimonial competence and personal knowledge to address that point, let alone any attempt to claim the communication was "confidential" at the time it was sent. Generalities about office routines or modes of practice in the McPherson Declaration do not establish confidentiality in the specific instance of the PEX 20 memo; and the Lowman Declaration attempts to impute confidentiality and affix privilege four years after the fact are certainly irrelevant to the actual confidentiality of the memo in 2017. *See* DEX 12, ¶¶ 5-8.

The glaring disproof of Element 3 appears where neither PEX 20 nor the two Declarations submitted by Defendant in any way show there was any "purpose of securing legal advice" to PEX20. None of these documents shows an action item for the lawyer; none of them shows an institutional procedure whereby the submission of such a memo would trigger a legal (as opposed managerial) analysis, response or action. As stated in *Upjohn Co. v. United States*, 449 U.S. 383. 390 (1981), the scope of the privilege is limited to "the giving of professional advice to those who

can act on it" and "the giving of information to the lawyer to enable him to give sound and informed advice." Defendant has not and cannot show PEX 20 fell into either category under *Upjohn*. Indeed, the very wording of PEX20 belies these notions. Therefore, this Court cannot infer that PEX 20 was sent to "general counsel" to "secure a legal opinion" or cause some other lawyer-like action.

**Element 4**: The privilege must be claimed by the client. *Allen*, 106 F.3d at 600; *COA*, 330 F. Supp. 3d at 347 (same).

Certainly via its instant Motion and the supporting Declarations, Defendant is attempting to claim the attorney client privilege – *three to four years after* the PEX 20 memo was prepared and sent to Mr. McPherson. The memo itself says nothing about its being confidential or privileged. There is no evidence to establish that Defendant Agency considered the memo attorney-client privileged upon its drafting or transmission in 2017.

The McPherson Declaration mentions the PEX 20 memo "regard[ed] Executive Resources Board *tasking* specifically as it relates to *personnel matters* regarding Ms. Randon." Dex 14, ¶ 12 (emphasis added). The term "tasking" seems to suggest a process of figuring out who was going to carry out what function related ███████████████████ The reference to "personnel matters" points to a management and HR function, not something for a lawyer to work on. In addition to being the Army General Counsel, McPherson was at the time serving as Acting Under Secretary of the Army, a position on its face more likely to deal with matters of senior level personnel and staff. The content of PEX 20 refers to an employee's performance issues, saying nothing about any planned or pending legal action. *See* PEX 20 ███████████████ ███████████████

Defendant has not established Element 4, and the actual evidence itself (*i.e.*, PEX20) disproves the element's application here.

**Element 5:** The memo must have been confidential "both at the time of the communication and maintained since." *Allen*, 106 F.3d at 600 (text paraphrased); *COA*, 330 F. Supp. 3d at 347 (same).

Defendant's Motion cannot establish Element 5 for several reasons. First, the PEX 20 memo itself is not marked with "confidential" or any synonymous warning or advisory. Second, the memo's content does not express an intention to create or maintain confidentiality.

Third, the memo is addressed to "Army General Counsel," not to any person by name. The memo gives the impression of being an update or report upon a meeting, being sent to the office of the general counsel for routine reading and filing. The PEX 20 memo apparently is an"FYI" memo. Very recently a federal court in Massachusetts reviewed judicial decisions in several jurisdiction, and ultimately denied the attorney-client privilege applied to an "FYI" type of communication, holding: "the email at issue does not warrant protection where (1) it was simply to inform co-counsel and the client of an action that had been taken ...," and (3) the [email at issue] *called for no action or forbearance from the recipients."* *Gattineri v. Wynn MA, LLC*, 220 U.S. Dis. LEXIS 222171, *8 (D. Mass.)(emphasis added). Along the same lines, nothing in the PEX 20 memo suggests it was any more than an update or report – certainly not a request for the thoughts or action of a lawyer.

Fourth, in his Declaration, McPherson does not aver that he ever saw the PEX 20 memo at the time of its creation or transmission. He therefore cannot testify either to the memo's initial confidentiality or to the maintenance of its confidentiality.

-7-

Fifth, Plaintiff Warren Whitlock at some point had obtained a copy of the PEX 20 memo, although he had evidently packed it away in a box ending up in his mother's home. The very fact that he possessed this memo conclusively proves the memo's confidentiality between the author of the memo and (allegedly) the lawyer, McPherson, was *not maintained*. Accordingly, Defendant simply cannot establish Element 5.

### B. Defendant Makes No Case for "Prejudice" to Warrant a Deviation From Settled Law of Attorney-Client Privilege.

Defendant's Motion does not explain why the use of PEX 20 is so damaging to Defendant that it should be destroyed. If there were concerns about the memo's effects on people's privacy, or even upon the attorney-client bond of trust within the Agency, then Defendant can move to seal the document.

Strange, too, is Defendant's disingenuous and self-contradictory attempt to confuse the issues. On page 3, the Motion contends: "Defendant specifically objected to [the discovery request] as too vague and ambiguous to allow any meaningful search for responsive information ..." That objection was meritless on its face. The discovery request had sought "the Memorandum from/to Army General Counsel (or the Office of General Counsel) on Executive Resources Board of 17 December 2019." Mot. at 3, *citing* DEX 3, at 6. The request could not be any more precise – it named the recipient, topic and exact date of the document.

Defendant then admitted the Army "searched for the document sought ... but the information provided in the request was insufficient to allow Defendant to uncover it." Mot. at 3. But in the same paragraph, Defendant says the opposite, indicating "Defendant ... did not search for information responsive to [Plaintiff's request]." *Id.*

Clearly, Defendant does not want Plaintiff to use PEX 20 as part of the case, but that is not enough to treat the memo as attorney-client privileged. The caveat recognized in federal and state courts applies: When it comes to attorney-client privilege in the entity lawyer context, "the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, *lest the mere participation of an attorney be used to seal off disclosure*." *Parneros*, 332 F.R.D. at 497 (emphasis added; quotations omitted), *quoting Rossi v. Blue Cross & Blue Shield of Greater New York*, 73 N.Y.2d 588, 592-93, 540 N.E.2d 703 (1989) (internal citations omitted); *Adair v. EQT Prod. Co.*, 285 F.R.D. 376, 380 (W.D. Va. 2012) (same point of law and quotation, citation omitted).

## II.    PEX 20 is Also Not Protected by the Deliberative Process Privilege.

Defendant's Motion also urges PEX 20 is protected from disclosure by the deliberative process privilege. *See* Mot. at 11. To invoke this privilege, Defendant bears the burden of showing the communication at issue was (1) *predecisional*, *i.e.*, "antecedent to the adoption of an agency policy," and (2) *deliberative*, *i.e.*, "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Jones*, 256 F.R.D. at 516 (quotations and citations omitted); *accord, City of Va. Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993).

### A.    The PEX 20 Memo Was Not a Predecisional Document *vis a vis* an Agency Decision About Either Law or Policy.

To be deemed predecisional, the document must be "prepared in order to assist an agency decisionmaker in arriving at his decision." *City of Va. Beach*, 995 F.2d at 1253 (quotation and citation omitted). The term "decision" does not mean every daily decision, but rather decisions concerning *federal agency policy*. *See id.* ("Agencies are, and properly should be, engaged in a continuing process of examining their *policies*; this process will generate memoranda containing

-9-

recommendations which do not ripen into agency decisions"(emphasis added)), *quoting NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-52 nn. 18-19 (1975));  *COA*, 330 F. Supp. 3d at 352 (stating a predecisional document is "antecedent to the adoption of an agency policy" (citation omitted)); *Rollins v. U.S. Dep't of State*, 70 F. Supp. 3d 546, 552 (D.D.C. 2004) (noting the privilege allows withholding documents that "reflect the agency's group thinking in the process of working out its policy and determining what its law will be" (*citing Sears, Roebuck*, 421 U.S. at 153 (internal quotations omitted)).

The judicially recognized polices underlying the deliberative process privilege expressly aim to "encourage open, frank discussion on matters of policy" and "protect against premature disclosure of proposed policies before finally they are adopted" so as to "protect against public confusion" that might result from premature disclosure.  *COA*, 330 F. Supp. 3d at 354 (quotation and citations omitted).  Defendant argues in 2021 that the PEX 20 memo, drafted in 2017, was predeliberative. Yet Defendant's Motion and Declarations do not point to any agency policy decision for which the PEX 20 memo was a predeliberative document.  The memo itself does not discuss a policy or law-making function.   To the contrary, the memo discusses the conduct and behavior of a single Army senior executive, Diane Randon.  The memo ends with Mr. Kelly's recommending some kind of decision about Ms. Randon – not about agency policy regarding the SES generally or otherwise, just Ms. Randon.  Accordingly, the memo fails the first test to invoke the deliberative process privilege.

**B.      The PEX 20 Memo Was Not a "Deliberative" Document Concerning a Decision on Legal or Policy Matters.**

To be deemed "deliberative," the PEX 20 memo must have been "a direct part of the deliberative process in that it ma[de] recommendations or express[ed] opinions on legal or policy matters." *Jones*, 256 F.R.D. at 516 (citations omitted). "Deliberative material 'reflects the give-and-take of the consultative process ... by revealing the manner in which the agency evaluates possible alternative policies or outcomes.'" *Id.* at 518, *quoting City of Va. Beach*, 995 F.2d at 1253 (internal citations omitted) (case involving agency decisions about a water pipeline system); *accord, COA*, 330 F. Supp. 3d at 352 (holding the document must be one that "makes recommendations or expresses opinions on legal or policy matters"), *quoting Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

As noted above, the PEX 20 memo discusses ███████████████████████ ███████████ There is scant reference to anything legal, and none to agency policy discussions or plans. Indeed, Defendant proffers no evidence the memo was part of a "give-and-take" discussion. The McPherson Declaration does not even admit that Mr. McPherson ever actually received the memo, let alone claim there was an agency policy discussion underway at the time in 2017. "That back-and-forth is critical to a determination that documents and communications are deliberative." *Jones*, 256 F.R.D. at 518 (citations omitted). Here, no back-and-forth or give-and-take concerning agency legal or policy decisions has been shown in which the PEX 20 memo was a part.

In view of the forgoing, Defendant has not shouldered its burden of proving the PEX 20 memo was a deliberative process document, so the privilege cannot be imposed to block the use of the document in this litigation.[3]

### III. Any Prejudice Alleged by Defendant Can Be Remedied By Reopening The Deposition Of Plaintiff To Address The Subject Matter Of The Later-Produced Documents

Defendant's Motion urges that certain documents produced in the litigation after the close of discovery should be barred from use in this case for any purpose. *See* Mot. at 14. The primary thrust of Defendant's motion is that "the lack of any Bates number on Plaintiff's exhibits thereby allegedly demonstrating none came from the document production during discovery in this Court." *Id.* at 15. However, this is not true because Plaintiff's Exhibits were selected from the extensive administrative record not the Bates-numbered documents provided by the Defendant – as many of Plaintiff's Trial Exhibits are identical to Defendant's Trial Exhibits and have the same source, *i.e.*, the administrative records made before the U.S. Merit Systems Protection Board. The mere fact that there is no Bates number on some of Plaintiff's Exhibits does not mean that the documents were not available to Defendant during discovery. Indeed, Defendant admits as much when he states "if Plaintiff can identify by Bates number where any of the other proposed exhibits have been produced in discovery, Defendant will withdraw its motion as to those exhibits." *Id.* at n. 2. While there is no reason why the burden of correlating Plaintiff Exhibit's with Defendant's Bates numbering system should fall on Plaintiff, Plaintiff nevertheless has undertaken this task with the following results:

---

[3] "A record is not protected merely by virtue of being a relevant predecisional communication." *COA*, 330 F. Supp. 3d at 353-54 (citation omitted).

-12-

| **Plaintiff's Ex.** | **Record Citation** | **Discovery Citation** |
|---|---|---|
| PX[4]-1 | DX[5]-80 | US 000012792 – 12852[6] |
| PX-2 | DX-80 | US-00012852 |
| PX-3 | DX-80 | US-00012855 – 12857 |
| PX-4 | DX-80 | US-00012859 – 12860 |
| PX-5 | DX-80 | US-00012862 – 12863 |
| PX-6 | DX-80 | US-00012865 – 12880 |
| PX-7 | DX-81 | US-00012882 |
| PX-8 | DX-81 | US-00012884 – 12885 |
| PX-9 | DX-81 | US-00012887 – 12888 |
| PX-10 | DX-81 | US-00012890 |
| PX-11 | DX-81 | US-12892 – 12895 |
| PX-12 | DX-81 | US-12897 – 12900 |
| PX-13 | DX-81 | US-12902 |
| PX-14 | DX-81 | US-12904 – 12936 |
| PX-15 | DX-81 | US-12939 – 12941 |
| PX-16 | DX-81 | US-12943 – 12946 |
| PX-17 | DX-81 | US-12948 |
| **Plaintiff's Ex. No.** | **Record Citation** | **Discovery Citation** |

[4]"PX" denoted Plaintiff's Trial Exhibit.

[5]"DX" denoted Defendant's Trial Exhibit.

[6]Discovery citations starting with "US" followed by numbers are references to defendant's Bates stamped numbers on produced documents.

-13-

| PX-18 | DX-81 | US-12950-12955 |
|-------|-------|----------------|
| PX-23 | DX-9 | US-00000011.0095 – .0098 |
| PX-25 | App. Doc. Prod. - MSPB[7] | Produced Doc. # 14 / Bates #s 59-61 |
| PX-26 | DX-55 | US-00002099.0045 – .0046 |
| PX-27 | DX-16 | US-00000011.0149 – .0160 |
| PX-28 | DX-79 | US-00012771 – 12794 |
| PX-29 | DX-15 | US-00000011.0135 – .0148 |
| PX-38 | DX-83 | US-00012975.0697 – .0699 |
| PX-39 | DX-83 | US-00012975.0681 – .0683 |
| PX-40 | DX-83 | US-00012750.0549 – .0564 |

Of the 42 proposed Plaintiff's Trial Exhibits, only 15 are not also contained in the proposed Defendant's Trial Exhibits. Moreover, the source of all these documents that are in both party's trial exhibits is the administrative record in this case formed by Plaintiff-Appellant's and the Army's filings before the U.S. Merit Systems Protection Board ("MSPB" or the "Board"), the discovery provided by the parties to each other during that administrative appeal, and the hearing exhibits and hearing testimony submitted before the Board's administrative judge during the hearing. The administrative record in this MSPB appeal is extensive, covering thousands of pages of documents,

---

[7]"App. Doc. Prod. - MSPB" references Plaintiff-Appellant's production of documents to the Army during the discovery phase of his MSPB appeal (MSPB Docket No. DC-0752-10-0288-I-1). The documents produced at that time were sent to Army counsel on 25 April 2019. Although unlike PX-30 through PX-33 – which also were produced as part of the response to the Agency's document request during the MSPB discovery process (as Documents 1 through 4 in production, Bates 3s 1-2, 3-4, 5-6, and 7-8), PX-25 does not have an indication that it was Document No. 14 (Bates #s 59-61) in that production. That is because the copy of the document from which the copy of PX-25 was made was not the produced document, but rather a identical duplicate (absent the indication that it was a production document). In any case, both are exact copies of the EEO Counselor's Report.

and almost 2,000 pages of a four-plus day evidentiary hearing over September 16 – 21, 2019, during which many documents were employed to elicit witness testimony.

Also, an additional five of Plaintiff's Trial Exhibits were produced to the Army during the discovery phase of the MSPB appeal proceeding, and thus were plainly in the possession of Defendant as a consequence of Plaintiff-Appellant's producing them during the exhaustion of his administrative remedies.  These five Plaintiff's Trail Exhibits are:

| Plaintiff's Ex. No. | Record Citation | Discovery Citation |
|---|---|---|
| PX-25 | App. Doc. Prod.- MSPB[8] | Produced Doc. # 14 / Bates #s 59 - 61 |
| PX-30 | App. Doc. Prod.- MSPB | Produced Doc. # 1 / Bates #s 1 - 2 |
| PX-31 | App. Doc. Prod.- MSPB | Produced Doc. # 2 / Bates #s  3 - 4 |
| PX-32 | App. Doc. Prod.- MSPB | Produced Doc. # 3 / Bates #s  5 - 6 |
| PX-33 | App. Doc. Prod.- MSPB | Produced Doc. # 4 / Bates #s 7 - 8 |

As noted, they were produced by Plaintiff-Appellant to the Agency-Defendant during the MSPB appeal discovery proceedings, and so they bear the Bates markings of document production to the Army at that juncture (other than PX-25, which is explained in footnote 7, p. 13, *supra* .

That the great bulk of Plaintiff's Trial Exhibits (some 26 in number),  those that are identical to some of Defendant's Trial Exhibits, do not contain the Bates stamped numbers of Defendant's

---

[8]"App. Doc. Prod.- MSPB" references Plaintiff-Appellant's production of document to the Army in the discovery phase of Appellant's U.S. Merit Systems Appeals Board ("MSPB") appeal (MSPB Docket No. DC-0752-10-0288-I-1), produced to Army counsel on 25 April 2019.  The MSPB appeal here included a multi-day evidentiary hearing before an administrative judge employed by the MSPB, and the whole of the MSPB appeal – which included Plaintiff-Appellant's claims of discrimination and retaliation under Title VII of the Civil Rights Act, as amended – constitutes the requisite exhaustion of administrative remedies necessary to vest this Court with jurisdiction to hear this employment discrimination case.  Accordingly, the MSPB record, including the discovery done in that forum, the filings there, and the hearing transcript and hearing exhibits, constitute the administrative record of the matter before this Court.

document production – a point emphasized by Defendant repeatedly in its argument for exclusion – is readily understood once one realizes that these documents have as their source the administrative record at the MSPB, not Defendant's document production.  Thus, Defendant merely placed Bates stamps on the documents taken from the MSPB record and noted as Defendant's Trial Exhibits, while Plaintiff, who took the same documents from the same source (*i.e.*, the administrative record or photocopies made from that record), did not place Bates Stamps on them.  Why not?  Because Plaintiff's counsel retrieved these documents to use as trial exhibits from sources other than those produced by defendant in discovery.  Indeed, in response to Defendant's document request no. 3 in the litigation in this Court, Plaintiff indicated that he was producing none of the records referenced in his initial disclosures (as was requested in document request no. 3) – which were essentially documents contained in the administrative record formed during the MSPB proceedings.  As Plaintiff specifically stated in his response to Defendant's document request no. 3:

> The only documents "identified" in plaintiff's initial disclosures that plaintiff has in his custody or is in the custody of his attorneys are those in the administrative record of the MSPB proceedings in the appeal of the termination of his employment by the Department of the Army, an administrative record to which defendant and his attorneys of record in this civil action have equal access.  The other documents "identified" in plaintiff's initial disclosures were documents he and his counsel do not have but hope to obtain from defendant in discovery in this civil action.

Accordingly, plaintiff did not produce these documents as Defendant and his counsel had a full access to them, as did Plaintiff and his attorneys, in that they were all in the MSPB administrative record.  Thus, there are no Bates stamps on these documents as they were not taken from document production in this civil action, There is nothing more to it than that.

Further, the documents contained in proposed Plaintiff's Trial Exhibits 33 through 37 all relate to the situation created when Spurgeon Moore, a GS-15 subordinate of Mr. Whitlock, applied

-16-

for a sick leave sharing program to cover his absences due to his wife's illness and death, and Mr. Whitlock realized that such an application was improper and had been improperly applied for by Mr. Moore with the aid of Seema Salter, another GS-15 on Mr. Whitlock's staff (and a primary antagonist of his), and trying to do his job as a Senior Executive, tried to stop the "fraud" only to be frustrated by his supervisor (and primary antagonist) Diane Randon. Accordingly, all these exhibits are known to the Army (as they are Army documents) and were utilized in the examination of several witnesses during the MSPB evidentiary hearing, including Mr. Whitlock himself, Diane Randon, Spurgeon Moore, Seema Salter, and Vieanne Huertas, the official in Army Civilian Personnel with whom both Mr. Whitlock and Ms. Randon had contact on this leave sharing scheme of Mr. Moore and Ms. Salter.[9] Accordingly, these five proposed Plaintiff's Trial Exhibits – PX-33 through PX-37 – were properly disclosed to the Army during the course of this litigation. Moreover, they are Army documents – emails and blank forms, they cannot be seen as a surprise to Defendant.

This leaves just six of the 42 proposed Plaintiff's Trial Exhibits that are not readily accounted for in Defendant's Trial Exhibits or are documents otherwise contained in the MSPB administrative record in this matter, and two of these ten are Plaintiff's Trial Exhibit 20 (referred to variously as "PEX 20" and "PX-20") and the document which was appended to PX-20 – that is, Plaintiff's Trial Exhibit 21. As noted *supra* while dispelling Defendant's contention that PEX 20 should be excluded on grounds of attorney-client privilege grounds and/or deliberative process privilege grounds, there is no good excuse to exclude Plaintiff's Trial Exhibit 20 on privilege grounds, and the same applies to the document that was appended to it as received by Plaintiff, Plaintiff's Trial Exhibit 21 ("PX-21"). Moreover, with respect to PX-20, Defendant asserts as an

---

[9]In fact, DX-49 is the signed version of the forms used by Mr. Moore and Ms. Salter contained in PX-34.

-17-

addition ground for its exclusion that Plaintiff "simply had not looked for it during the discovery period." Mot. at 17, *citing* Defendant's Exhibit 10. But Exhibit 10 to the Motion does not support that assertion. In fact, Mr. Whitlock was managing his mother's affairs after her death and was not able to locate the document because he did not remember that he had left it in his mother's home.[10]

As to the other four documents contained in Plaintiff's Trial Exhibits list that are not readily found anywhere in the MSPB administrative record, four are plainly official Army documents that have bearing on the issues in this civil action, and can thus come as no surprise to Defendant. In this regard, PX-19 is the SES Executive Performance Agreement between the Army and Mr. Whitlock, setting forth the requirements to which he was to be held while an SES employee with the Army. While PX-24 is an April 13, 2011, memorandum from the Secretary of the Army concerning how the Army would be handling allegations of misconduct against members of the SES and other senior professional personnel. Thus, in any event, it cannot be gainsaid that these items have come as a surprise to the Army and, accordingly, in fairness it should not be excluded from Plaintiff's Trial Exhibits on that score.[11]

---

[10]Of course, the same would apply to PX-21, which was appended to PX-20 when received by Mr. Whitlock.

[11]This leaves just two documents that were not in the administrative record proper and which are contained in Plaintiff's Trial Exhibits: PX-41 and PX-42. As regards these documents, they were located at the last minute by Plaintiff and given to his below-signed counsel. In a perfect world, they should have been turned over to Defendant earlier. That they were not, however, ought not force their exclusion as they obviously bear on the issue of the form used in the performance appraisal for Seema Salter, an appraisal that is at the center of Defendant's justification for firing Mr. Whitlock. One is an addition to a 2017 appraisal of one of Plaintiff's subordinates (Clay Brashear) that both sides noted as exhibits for trial (PX-42), and the other (PX-41) is an short email string concerning Mr. Whitlock's appraisal of that employee. They are government documents and are relevant to a comparison between Mr. Whitlock's appraisal in 2017 of Seema Salter and his other subordinate managers (such as Clay Brashear). Accordingly, in the interest of justice, Plaintiff asks that he be permitted to utilize them at trial.

Finally, it is noteworthy that Defendant's claims of prejudice with regard to the alleged unproduced proposed Plaintiff's Trial Exhibits are vague and speculative, particularly concerning PEX 20 – and by extension presumably PX-21 (*e.g.*, "Defendant would have altered his discovery approach, including seeking return and destruction of PEX 20"). *Id.* at 17. As such, these claims of prejudice do not support the exclusion of otherwise relevant evidence. Indeed, as Defendant is now "seeking return and destruction of PEX 20" (and presumably PX-21 as well) it is difficult to see how it has suffered prejudice in that endeavor.

Regarding Defendant's assertion that had it "had possessed the documents prior to taking Mr. Whitlock's deposition, then Defendant's counsel would have expended a certain amount of time in deposition to inquire about them," that amount of time in deposition can be expended now, in the immediate future, by reopening Mr. Whitlock's deposition to question him about PX-20 and PX-21, or any of the other five to seven documents not plainly also a part of Defendant's Trial Exhibits or otherwise contained in the MSPB administrative record. Approximately the same amount of lawyer time will have been spent in either scenario. This Court can order the reopening of Plaintiff's deposition to allow Defendant the time to examine him concerning any of these few late-produced documents. *Nutramax Labs., Inc. v. Twin Labs., Inc*, 183 F.R.D. 458, 475 (D. Md. 1998) (district court judge permitting "a limited reopening of the depositions" to examine the witnesses further concerning documents not available at the initial deposition dates). Given the late September trial date for this matter, there will be no prejudice to either party if this course is taken.

## Conclusion

Plaintiff respectfully submits that, as demonstrated in detail herein above, Defendant's Motion must be denied in its entirety because (1) PEX -20 (and PX-21 by extension) is not restricted

from use in this litigation by the attorney-client or deliberative process privileges; (2) the great bulk

of Plaintiff's Trial Exhibits were in the hands of the Army and its lawyers as they are identical to

trial exhibits submitted by Defendant – as they were documents contained in the lengthy

administrative record in this matter made before the MSPB – (3) and/or they were otherwise

documents contained in the substantial MSPB administrative record, which included items produced

by Plaintiff-Appellant to the Agency-Defendant during discovery while the case was pending as a

mixed-case (*i.e.*, an adverse action appeal with a claim of employment discrimination) at the MSPB,

or (4) were utilized in the examination of witnesses during the lengthy MSPB evidentiary hearing,

In any case, the interests of justice require the inclusion of Plaintiff's Trial Exhibits.  Any potential

prejudice resulting from claimed surprise on Defendant's part can easily be overcome by permitting

the reopening of Plaintiff's deposition for the limited purpose of permitting Defendant to inquire

about those few items (we suppose PX-20 and PX-21 primarily) about which Defendant feels

aggrieved due to non-disclosure.  Plaintiff has no objection to such a remedy.

Respectfully submitted,

 /s/ *Ellen K. Renaud*
Ellen K. Renaud
Shareholder
Alan Lescht & Associates, P.C.
1825 K Street, N.W., Suite 750 |
Washington, DC 20006
Tel  (202) 852-8483 / Fax  (202) 463-6067
Email - Ellen.Renaud@leschtlaw.com

/s/ *David H. Shapiro*
David H. Shapiro
SWICK & SHAPIRO, P.C.

/s/ *Richard L. Swick*

-20-

SWICK & SHAPIRO, P.C.
1101 15th Street, N.W., Suite 205
Washington, DC 20005
Tel. (202) 842-0300 / Fax (202) 842-1418
Emails - dhshapiro@swickandshapiro.com
rlswick@swickandshapiro.com
Admitted *Pro Hac Vice*

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY THAT I have caused the foregoing Plaintiff's Opposition to

Defendant's Motion for Protective Order, to be served on defendant by emailing them through

the Court ECF. filing system to Defendant's counsel of record, Assistant U.S. Attorneys for the

Eastern District of Virginia, Kimere J. Kimball and Matthew J. Mezger at

kimere.kimball@usdoj.gov  and matthew.mezger@usdoj.gov, respectively, on this 14th day of

June 2021.

> /s/ *David H. Shapiro*
> David H. Shapiro
> SWICK & SHAPIRO, P.C.
> 1101 15th Street, N.W.
> Suite 205
> Washington, DC 20005
> Tel. (202) 842-0300
> Fax (202) 842-1418
> Emails - dhshapiro@swickandshapiro.com
>
> Attorney for Plaintiff