IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WARREN S. WHITLOCK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RYAN D. MCCARTHY, ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No.: 1:21-cv-008 (AJT/JFA) |

# ORDER

In this employment discrimination case, Plaintiff Warren S. Whitlock alleges that he was discriminated against on the basis of his race (African American) and sex (male) and ultimately removed from his position as Deputy Assistant Secretary of the Army for Diversity and Leadership because of that discrimination and also in retaliation for engaging in protected activity. In response, the Defendant-Employer alleges that Plaintiff was terminated because he falsified a performance appraisal for one of his supervised employees and then failed to candidly explain his conduct. Pending before the Court is Defendant's Motion for Summary Judgment. [Doc. No. 70] ("MSJ"). Because the Defendant has offered a legitimate nondiscriminatory reason for his termination and Plaintiff has failed to present sufficient evidence that his termination was a pretext for discrimination or retaliation, Defendant's Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

Unless otherwise stated, the following facts are undisputed[1]:

---

[1] Plaintiff has not included in his opposition brief, as required under Local Civil Rule 56(B), a "section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." Plaintiff has, however, included a list of

1

On May 15, 2016, Plaintiff was hired as the Deputy Assistant Secretary of the Army for Diversity and Leadership, known as the DASA-DL position.  [Doc. No. 72-2] Page ID 690 (Joint Stipulation of Material Fact 1).  On January 20, 2017, Diane Randon began performing the duties of the Assistant Secretary of the Army for Manpower & Reserve Affairs ("M&RA"), becoming Plaintiff's direct supervisor at that time, and beginning in July 2017, she began performing the duties of the Principal Deputy Assistant to the Secretary of the Army for M&RA.  [Doc. No. 72-2] Page ID 678-80 (Deposition of Diane Randon); 691 (Joint Stipulation of Material Fact 8).

**A. Plaintiff's Performance Appraisal of Seema Salter**

On August 29, 2017, Plaintiff met with one of his subordinates, Seema Salter, to provide her with a performance appraisal for the 2016-2017 year.  *See* [Doc. No. 72-2] Page ID 691 (Joint Stipulation of Material Fact 9).  He showed her his written appraisal of her, which contained an overall rating of 2 ("excellence") out of 5 (with 1 as the best possible rating).  [Doc. No. 72-2] Page ID 690 (Joint Stipulation of Material Fact 10); [Doc. No. 74-3] ("DAIG Report") Page ID 994.  Salter then signed the appraisal, [Doc. No. 72-2] Page ID 690 (Joint Stipulation of Material Fact 9) but did not make a copy.  [Doc. No. 78-2] Page ID 1290-91 (2018 DAIG Interview of Plaintiff).

After this meeting, Plaintiff changed Salter's appraisal before submitting it to the Management Support Office ("MSO"), the division's human resources office.  DAIG Report Page ID 994-95; [Doc. No. 78-2] Page ID 1291-92 (2018 DAIG Interview of Plaintiff ).  Some

---

disputed facts, explanations, and argument in his Opposition to the Motion.  *See* [Doc. No. 78] ("Opp.").  Local Civil Rule 56 provides that "the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Notwithstanding Plaintiff's failure to comply with the Rule, the Court has considered whether there are any disputed issues of material facts based on his entire briefings.

portions of the submitted written appraisal were manually "whited out" and Salter's rating was changed to a "3" from a "2," a lower rating, with an additional signed document attached providing Plaintiff's review of Salter's performance purportedly for the 2016-2017 year. DAIG Report Page ID 985-88, 994.

On September 1, 2017, Plaintiff emailed that Salter had received a "3" rating to Jeff Angers, who compiled the ratings given to employees in M&RA. [Doc. No. 74-1] Page ID 940; [Doc. No. 72-4] Page ID 750. That same day, Salter emailed Plaintiff that she had received a notification that her uploaded appraisal reflected a rating of "3" instead of the agreed-upon "2." DAIG Report Page ID 985; *see also* Opp. Page ID 1239. Salter copied Randon on the email, who was Plaintiff's direct supervisor and Salter's second-line supervisor. [Doc. No. 72-4] Page ID 749; Opp. Page ID 1239-40. Plaintiff failed to respond to Salter's email for a few days but on September 6, 2017, Randon obtained the appraisal Plaintiff uploaded to MSO and separately asked Angers for Salter's rating Plaintiff had directly given him, which indicated that Plaintiff had twice submitted Salter's rating as "3." [Doc. No. 72-4] Page ID 750.

According to Randon, once she had the altered appraisal in hand, she asked Plaintiff on September 6, 2017, for an explanation. At that time, Plaintiff explained to her that he had rethought Salter's performance after meeting with her and then changed her rating from a "2" to a "3" intentionally before submitting the appraisal. But then on September 7, Plaintiff revised his explanation to say that he had accidentally uploaded the wrong document. [Doc. No. 72-4] Page ID 750-52.[2] Randon asked him for the correct copy of the 2016-2017 appraisal, but "he was never able to produce [it]." *Id.* Page ID 751.

---

[2] More specifically, Randon claimed that Plaintiff told her that after he had discussed Salter's rating with her, he "further contemplated her performance and decided she wasn't a level 2, she was a level 3. And so he made the adjustments, put a statement on the back of the appraisal, and transmitted it to [MSO]." [Doc. No. 72-4] Page ID 750. She further reported that on September 7, 2017, Plaintiff told her that he "had a chance to think about it, it's all

3

Plaintiff, on the other hand, denies Randon's recollection of events. More specifically, Plaintiff denies that he "deliberately sought to submit an altered document as Ms. Salter's rating" or that he admitted as much to Randon when she first asked about the appraisal incident. Opp. Page ID 1234-35. Instead, he claims he accidentally uploaded a preliminary draft of Salter's not yet due 2017-2018 appraisal for which he used the 2016-2017 appraisal as a template. *Id.* Page ID 1240; *see also* [Doc. No. 78-2] Page ID 1297-99 (2018 DAIG Interview of Plaintiff).

On the evening of September 7, 2017, Plaintiff went to Salter, claimed he had accidentally submitted an altered performance appraisal, and asked her to sign a new performance appraisal, but with the parts to be completed by Plaintiff blank, which she refused to do, [Doc. No. 73-3] Page ID 918-920 (Salter's Deposition); *see also* [Doc. No. 74-2] Page ID 951, 968-70, following which Plaintiff emailed Randon that Salter "was not amenable to resolving the issue." [Doc. No. 74-2] Page ID 980.

**B. The DAIG Investigation and Randon's Performance Appraisal of Plaintiff**

On September 11, 2017, Randon submitted a complaint to the Department of the Army Inspector General (DAIG) alleging Plaintiff "falsified a document and knowingly made dishonest statements to a superior." DAIG Report Page ID 983. DAIG instituted an investigation on November 2, 2017. *Id.*

In November 2017, while the DAIG investigation was on-going, Randon recommended that Plaintiff be rated "unsatisfactory" in his own 2016-2017 appraisal because of his actions related to the Salter appraisal, among other reasons.[3] [Doc. No. 75-1] Page ID 1006 (Randon's

---

a mistake," that "he was doodling or he was like, you know, just hypothetically adjusting appraisals" and "submitted the wrong copy." [Doc. No. 72-4] Page ID 751. In a subsequent email to Randon, Plaintiff said the appraisal he uploaded "was an error of omission, not commission." [Doc. No. 74-2] Page ID 949.

[3] Plaintiff suggests a number of other reasons for his negative performance appraisal including an issue involved in granting a subordinate leave, *see* Opp. Page ID 1231-32, 1251-53, and an issue with Plaintiff's leadership with regard to the 2017 Black Engineer of the Year Awards (BEYA) program, *see* Opp. Page ID 1236-37, 1251. Nevertheless, he acknowledges that "Randon based her 2017 SES evaluation of [Plaintiff] . . . *principally* on her

Performance Appraisal of Whitlock). In response, Plaintiff requested a "Higher Level Review" in an effort to obtain a better performance appraisal. [Doc. No. 75-1] ("Wolfrey Decl.") 1033; [Doc. No. 75-1] Page ID 1014-21 (Plaintiff's Justification Document for Increase Performance Appraisal). Gerald O'Keefe, an employee outside of Plaintiff's chain of command, provided this review. Wolfrey Decl. Page ID 1033. O'Keefe "reviewed the original appraisal and the additional submission provided by [Plaintiff]" and also met separately with Randon and Plaintiff, who provided additional information to O'Keefe. [Doc. No. 75-2] ("O'Keefe Memo") Page ID 1037.

O'Keefe recommended to the Army's Performance Review Board (the "Board") that Plaintiff's "unsatisfactory" rating be sustained because of the Salter appraisal incident. *Id.* Page ID 1038. The Board then conducted another review of Plaintiff's employment appraisal taking into consideration O'Keefe's review as well as Plaintiff's original appraisal by Randon. Wolfrey Decl. Page ID 1033. In March 2018, the Board made a final recommendation to the Secretary of the Army, but the Secretary held the final decision in abeyance pending the results of the DAIG investigation. *See* [Doc. No. 75-2] Page ID 1040.

The DAIG, as part of its investigation, interviewed Salter, Randon, Plaintiff, and MSO personnel responsible for managing appraisals. DAIG Report Page ID 983-84. On June 1, 2018, DAIG issued its Report. In the Report, DAIG did not credit Plaintiff's version of events— namely that he altered copies of all employees' appraisals to make templates in preparation for the following year and that it was a "clerical error" to submit the 2017-2018 appraisal for Salter instead of the 2016-2017 one. DAIG Report Page ID 994-95. Rather, the Report concluded that Plaintiff's "changes to the appraisal were intentional and that when questioned about his actions

---

personal opinion about what transpired" with respect to the Salter appraisal and not these other events. Opp. Page ID 1243 (emphasis added), *see also* 1253.

5

by [] Randon and DAIG, he failed to be truthful, straightforward and candid." *Id.* Page ID 995. Overall, the Report concluded that "[t]he allegation that Mr. Whitlock exhibited a lack of candor with an official document, took actions to mislead a superior, and made statements that were not truthful, straightforward, and candid" were "substantiated." *Id.* Page 995. Plaintiff alleges this conclusion was entirely based on Randon's version of events. Opp. Page ID 1243-44.

### C. CSLMO Review and Plaintiff's Removal.

After the DAIG made its determination, it sent its findings to the Civilian Senior Leader Management Office (CSLMO), managed by Deputy Under Secretary of the Army (DUSA) Thomas Kelley. [Doc. No. 75-1] ("Wolfrey Decl.") Page ID 1034. On June 28, 2018, DUSA Kelley appointed Anne Richards (a tier III SES employee) to review the DAIG findings and propose any discipline. [Doc. No. 75-3] ("2021 Richards Decl.") Page ID 1133.

On August 30, 2018, Richards proposed Plaintiff's removal from his position. [Doc. No. 75-2] Page ID 1089; 2021 Richards Decl. 1134; *see also* [Doc. No. 75-2] ("2019 Richards Decl.") 1077. Richards did not consult Randon, 2021 Richards Decl. Page ID 1134, or Plaintiff with respect to her decision. 2019 Richards Decl. Page ID 1077. Instead, her "removal proposal was based exclusively on [her] own personal assessment of the appropriate discipline for the misconduct substantiated by the factual evidence[.]" 2021 Richards Decl. Page ID 1134. Richards was not in Plaintiff's chain of command, *see* [Doc. No. 75-2] ("2019 Moore Decl.") Page ID 1072, and at the time she recommended removal, Richards was not aware of Plaintiff's EEO activity, described *infra*. 2019 Richards Decl. Page ID 1077.

DUSA Kelley then appointed Bill Moore to review Richards's proposed discipline as well as any response from Plaintiff in order to make a final disciplinary decision. 2019 Moore Decl. Page ID 1071-72. Like Richards, Moore was not in Plaintiff's chain of command and

6

while he was aware of Plaintiff's EEO activity, he has affirmed that "it did not have a bearing on [his] decision." *Id.* Page ID 1073-74. Moore reviewed "the entire case file" and met with Plaintiff and his attorney at their request. *Id.* Page ID 1072. "The facts led [him] to decide a certain document had been tampered with" and Plaintiff "was responsible for tampering with this document and was not forthcoming in his explanation." *Id.* As a result, Moore decided the charges warranted Plaintiff's removal. *Id.* As with the DAIG Report, Plaintiff claims that the decision to remove him "was based almost completely on [] Randon's rendition" of the appraisal incident and also was in response to his filing of an EEO complaint, as described below. Opp. Page ID 1245-46.

On January 8, 2019, Moore directed that Plaintiff be terminated effective January 19, 2019. Doc. No. 75-2 Page ID 1102; *see also* [Doc. No. 72-2] Page ID 691 (Joint Stipulation of Material Fact 12).[4]

**D. EEO Office Complaint**

In January 2018, while the DAIG investigation was underway, Plaintiff contacted the EEO Office of the Army Corps of Engineers (USACE) and alleged that Randon had improperly issued him a low performance appraisal. Opp. Page ID 1247; [Doc. No. 72-2] Page ID 646:13-16 (Plaintiff Deposition). In June 2018, he followed up with a formal complaint concerning his performance appraisal and his detail to the Center for Military History ("CMH"), later amending his complaint to include his removal. Opp. Page ID 1234; [Doc. No. 78-20] Page ID 1546-50; [Doc. No. 75-3] Page ID 1142.

---

[4] There is a discrepancy in the record as to Plaintiff's termination date. Moore's memo states the date is January 19, 2019, Doc. No. 75-2 Page ID 1102, whereas Joint Stipulation of Material Fact 12 states January 18, 2019, [Doc. No. 72-2] Page ID 691. Nevertheless, this discrepancy does not affect the analysis or conclusion of this Order.

Plaintiff filed this action on January 29, 2020. [Doc. No. 1] ("Compl."). Defendant moved for summary judgment on July 23, 2021, and the Court held a hearing on that motion on August 25, 2021. [Doc. No. 82].

## II.     LEGAL STANDARD

In reviewing a motion for summary judgment, courts must view the facts in the light most favorable to the party opposing the motion. *Porter v. U.S. Alumoweld Co.,* 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A "genuine" dispute as to a material fact is present "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248. Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## III.     ANALYSIS

### A. Applicable Legal Principles of Title VII

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). Title VII also forbids employers from retaliating against an employee for opposing adverse actions that the employee reasonably suspects to be

unlawful under Title VII.  *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018).  To survive a motion for summary judgment and establish a claim for racial or sex-based discrimination or for unlawful retaliation, a plaintiff must produce "direct evidence" of discrimination or retaliation or else satisfy the *McDonnell Douglas* burden-shifting scheme.  *Id*.  "Direct evidence encompasses conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested employment decision."  *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (internal quotations and citation omitted).

Under the *McDonnell Douglas* burden-shifting scheme, the plaintiff must establish a *prima facie* case of discrimination or retaliation.  *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).  The elements of a *prima facie* case of discrimination require a plaintiff to show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment than similarly situated employees outside the protected class."  *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom*. *Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012).  To establish a *prima facie* case of retaliation, a plaintiff must prove that (1) he engaged in a protected activity; (2) the employer acted adversely against him; and (3) there was a causal connection between the protected activity and the asserted adverse action.  *Strothers*, 895 F.3d 317 at 327.  For status-based discrimination claims, the employee must "show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision."  *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016), (quoting *Univ. of Texas Sw. Med. Ctr. v.*, *Nassar* 570 U.S. 338, 360 (2013)).  On the other

hand, "[r]etaliation claims . . . require the employee to show that retaliation was a but-for cause of a challenged adverse employment action." *Id*. at 217.

If the plaintiff successfully carries this burden of establishing a *prima facie* case, then the burden shifts to the employer who must prove that it had a legitimate nondiscriminatory or non-retaliatory reason for the adverse employment action. *Strothers*, 895 F.3d 317 at 328; *see also Ousley v. McDonald*, 648 F. App'x 346, 349 (4th Cir. 2016). This burden "is one of production, not persuasion; it can involve no credibility assessment." *Moore v. Mukasey*, 305 F. App'x 111, 115 (4th Cir. 2008) (internal quotations and citation omitted); *see also Dawson v. Washington Gas Light Co.*, No. 19-2127, 2021 WL 2935326, at *4 (4th Cir. July 13, 2021). In presenting a legitimate, non-discriminatory or non-retaliatory reason for Plaintiff's termination, a defendant "need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981). Instead, the defendant's "explanation provided must be legally sufficient to justify a judgment for the defendant." *Id.* at 255. And the defendant's reason must be both "clear and reasonably specific" to satisfy its burden of production. *Id.* at 258. If the employer carries this burden, then the plaintiff must establish by a preponderance of the evidence that the legitimate reasons offered by the defendant-employer were not its true reasons but were a pretext for discrimination or retaliation. *Id.* at 116. Importantly, "[d]espite this burden-shifting framework, the ultimate burden of persuading the trier of fact remains with the employee at all times." *Dawson*, 2021 WL 2935326 at *4 (internal quotations and citation omitted).

### B. Plaintiff's Title VII Claims Regarding His Performance Appraisal and Removal

Plaintiff has not presented any direct evidence of unlawful discrimination or retaliation and his claim is therefore analyzed under the *McDonnell Douglas* framework. In that regard, the

Court will initially assume without deciding that Plaintiff has made a *prima facie* demonstration of race-based and/or sex-based discrimination with respect to his removal and also for retaliation based on protected activity and proceed to consider whether Defendant has proffered non-discriminatory and non-retaliatory reasons for Plaintiff's termination and if so, whether Plaintiff has proffered sufficient evidence of pretext. *See Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004) (analyzing Plaintiff's age discrimination claim by assuming "arguendo that appellants have established a prima facie case of age discrimination" before considering the claim under the next steps of the *McDonnel Douglas* framework).

Here, the Defendant has clearly come forward with a "clear and reasonably specific" legitimate, non-discriminatory and non-retaliatory reason for Plaintiff's removal, namely that Plaintiff's "changes to the [Salter] appraisal were intentional and that when questioned about his actions by [] Randon and DAIG, he failed to be truthful, straightforward and candid," all of which violated Department of Defense policy. DAIG Report Page ID 995.

Plaintiff, in response, contends that this proffered reason was pretextual because the dispute centrally concerned whether Plaintiff intentionally submitted an altered employment appraisal or lied to Randon about his conduct and a trial is therefore necessary to resolve this hotly contested "he said/she said" factual dispute. Opp. Page ID 1249. But Plaintiff misunderstands the applicable standard of review of the Defendant's decision to terminate him. The issue is not whether Defendant correctly decided that factual issue against the Plaintiff. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (stating it is not the responsibility of this Court to sit as a "super-personnel department" deciding whether an employment decision was the "correct" decision); *Ousley*, 648 F. App'x at 349 ("[I]t is not within our purview to question whether the employer's proffered basis for the disputed action was wise, fair, or even

correct, ultimately, so long as it truly was the reason for the action.") (internal quotation marks and citation omitted). Rather, the issue is whether the reason it gave was the real reason for Plaintiff's termination or whether it was pretext for discrimination or retaliation, regardless of whether it was the correct decision.

There is no dispute that Plaintiff submitted an altered appraisal, *see, e.g.*, [Doc. No. 72-3] Page ID 716 (Plaintiff's Decl.); [Doc. No. 75-1] Page ID 1002 (DAIG 2018 Interview of Plaintiff), and Plaintiff has not presented any evidence sufficient to reasonably infer that Defendant's given reasons were not the decision-makers' real reasons or that the decision-makers used the reason given as a pretext for discrimination or retaliation. Rather, Plaintiff relies on a "Cat's Paw" theory of liability. Based on that theory, Plaintiff contends that Randon infected the decision-making process with her discriminatory animus, which caused "others to do her dirty work" by impermissibly swaying the decision of CSLMO in its decision to remove Plaintiff. Opp. Page ID 1253.

> Liability under a Cat's Paw theory may be established under the following circumstances:
>
> [w]hen a formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by a subordinate, it is not inconsistent to say that the subordinate is the actual decisionmaker or the one principally responsible for the contested employment decision, so long as he otherwise falls within the parameters of the discrimination statute's definition of an employer or agent of the employer.

*Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 290 (4th Cir. 2004) (en banc), *abrogated in part on other grounds*, *Nassar*, 570 U.S. 338. But the Fourth Circuit has cautioned against and "decline[d] to endorse a construction of the discrimination statutes that would allow a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decisionmaker simply because he had a

substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision." *Id.* at 291.

Plaintiff has failed to produce evidence sufficient to support this Cat's Paw theory of liability as a matter of law. Although Randon filed a complaint with the DAIG, DAIG made the decision to initiate the investigation that led to Plaintiff's removal two months before Plaintiff's EEOC informal complaint; and Randon's role within that investigation was that of a witness. She did not recommend termination and she was organizationally removed from the DAIG. After the DAIG made its determination, it sent its findings to the CSLMO, managed by DUSA Thomas Kelley, who appointed Anne Richards, who was not in Plaintiff's chain of command, to review the DAIG's findings and propose any discipline. Without consulting Randon, Richards proposed removal based on her review of the DAIG investigation as well as another investigation pertaining to Plaintiff's conduct in connection with the BEYA awards. *See infra* at 4 n.3. After receiving Richards's recommendation, DUSA Kelley then appointed Bill Moore, who also was not in Plaintiff's chain of command, to review Richards's proposed discipline as well as any response from Plaintiff in order to make a final disciplinary decision. Thereafter, Moore reviewed the entire case file and met with Plaintiff and his attorney at their request. Both Richards and Moore reviewed evidence outside of Randon's statements; and Moore's ultimate decision, as explained in his 13-page written decision, was also based on the entire DAIG investigation case file and the supplemental submissions, which included evidence other than Randon's version of what had happened, including Plaintiff's own submissions and oral responses. *See infra* at I.C. Based on this record, no reasonable inference could be drawn that the decision-maker simply "rubber-stamped" Randon's complaint or version of the facts or that

Plaintiff's termination was the result of Randon's purportedly discriminatory or retaliatory desire to remove Plaintiff.[5]

## IV. CONCLUSION

For the above reasons, there are no genuine issues of material fact pertaining to any of Plaintiff's claims and Defendant is entitled to judgment as a matter of law with respect to all of his claims. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 70], be, and the same hereby is, **GRANTED** and this action is **DISMISSED.**

The Clerk is directed to enter judgment in favor of Defendant pursuant to Rule 58 and forward copies of this Order to all counsel of record.

Alexandria, Virginia
December 28, 2021

Anthony J. Trenga
United States District Judge

---

[5] Defendant has also moved for summary judgment on Plaintiff's other claims cited in his Complaint including his claim that (1) his detail to CMH during the DAIG investigation was a result of race-based and sex-based discrimination; and (2) he was subjected to a hostile work environment, including at the hands of Salter, his subordinate and also an African-American. [Doc. No. 79] Page ID 1602; *see supra* n.4. Plaintiff has not meaningfully opposed dismissal of these claims in his Opposition to Defendant's Motion for Summary Judgment and has effectively waived or abandoned them. *Compare* Compl. ¶¶ 9-19 *with* Opp. Page ID 1247-54; *see also Orbit Corp v. Fedex Ground Package Sys., Inc.*, No. 2:14CV607, 2016 WL 6609184, at *15 (E.D. Va. Nov. 8, 2016) (stating a plaintiff's only passing mention of certain claims in an opposition to summary judgment rendered them waived or abandoned) (collecting cases). In any event, the Court also finds and concludes with respect to these claims that there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law.